We'll hear argument next in Case 16-6855, Wilson v. Sellers. Mr. Olive. Mr. Chief Justice, and may it please the Court, when a court in 2254 proceedings reviews a State court's summary denial of appeal from a lower court's reasoned post-conviction opinion, the Federal court should look through the appellate silent order to that last reasoned decision, as this Court does, as all the circuits have done other than the 11th. Look through like this best fits the history of AEDPA, it best fits the plain reading of 2254d, and it best fits this Court's precedence. The ruling in Richter was a necessary ruling and a narrow ruling. The question posed in Richter was what to do, quote, where a State court's decision is unaccompanied by an explanation, close quote. This Court's choice was either to require de novo review of that, utterly inconsistent with the purpose and the history of AEDPA, or to accommodate AEDPA and 2254d. Suppose that the Georgia Supreme Court in this case had issued an order saying we affirm the decision below, our decision should not be taken as necessarily agreeing or disagreeing with a reasoning in the lower court's opinion. Would look through be appropriate in that situation? Your Honor, it depends. The Yilst presumption is rebuttable, as Justice Scalia explained in the 1991 opinion. And he also explained that there's no gold standard for how it is rebutted. He gave some examples of how it could be rebutted. And I think that would be something to consider. But whether it would ultimately rebut, I couldn't say. You can't say. Right. I know that they would. So we would presume that the State supreme court had adopted the reasoning of the I think that it goes a long way toward rebutting. But whether it ultimately would rebut could depend on other facts and circumstances in the case. For example, there could be a reason for that decision because the State briefs things that weren't presented as basis for the decision below. It could be that the Court, as Justice Scalia said in Yiltsin 91, asked for further briefing on some items. And I agree that a court saying that is a significant circumstance to consider. And the Georgia supreme court is quite capable of saying that. Suppose it said it in every case. Suppose you win here. And then the Georgia supreme court said, now we're going to add as boilerplate to every decision, we are not relying on the reasoning of the lower court. That would seem like a ruse, Your Honor, to do it. How could they know in every single case that that's what they're going to do? And what would they intend in every single case? Kennedy, you could play with the words. They could say we affirm not necessarily for the reasons below. You know, they could have a formulation. Yes. You know, the Justice, even the dissent below, said that that was a possibility. And it gets around the critique that this is judging opinions by lower courts. Well, why would it be a ruse? It seems to me that there is a general, that that is the general practice of appellate courts in the United States. When a court summarily affirms the decision of the lower court, the summary affirmance is not taken as necessarily adopting the reasoning of the lower court. That's the meaning of our summary affirmances. That is the meaning, the established meaning of thousands and thousands of summary affirmances by Federal district courts, by Federal courts of appeals. Well, we know that the That might be the reasoning correct on merits decisions. Is it necessarily what courts do in granting or not granting ACOA? Granted or not granting? ACOA, which is what's at issue here, correct? Right. That's correct. We actually know that the I'm sorry, Your Honor. What's correct? Would you repeat it? What I said was, it's true that on summary affirmances where there's been full argument by both sides, that you don't know the basis for a lower court's decision. Correct. But is that the uniform, the same thing, a uniform practice in granting or denying ACOA? I don't know the answer to that question. Well, we do know in this case because we have a former chief judge of Georgia and a bunch of other judges from Georgia telling us that that's not the standard in Georgia, correct? Correct. That is correct. The summary affirmation of that's a question of Georgia law. That's not a question of appeals law. Well, we know that this Court doesn't consider the denial of a certificate of probable cause to appeal, not to adopt the decision of the habeas court. In both Sears and in Foster, this Court looked at a CPC denial and concluded not that it was precedent or that it said anything, but instead looked through it to the habeas corporate court in the State. Well, that's a very debatable and I think a dubious reading of both of those decisions. There's nothing in any of those decisions that says in determining like in Foster, was there a Batson violation. We didn't say, we're going to consider only the things that were said by the lower State court. We're not going to consider anything else. Did we say that? That's what the Court focused its attention on. Did it say that? You didn't, no, sir. You didn't say that expressly, but that's exactly what you looked to. You didn't say, oh, well, the State supreme court had a better reason or a different reason and we ought to defer to it. Well, but if you haven't, I think in Foster it was pertinent in the analysis, the lower State court determination was certainly evidence of what the issues were and were not decided. But I've read the footnote carefully and I don't see anything in there that suggested that that was an absolute rule of law. Looking at what the practice that the Court undertook and the procedure the Court undertook, you looked at the reasons given by the State habeas court. I agree that the State would never cite a CPC denial as precedent for anything in Georgia, and they haven't, and we wouldn't either. But it is clear that in this case and in most cases, except when the Court says otherwise, the Court is adopting the facts as set forth in the lower court's opinion. The State, the State in its brief to the Georgia supreme court in support of the denial of CPC, argued strictly the bases that were in the order that was entered in the lower court, which they wrote, by the way, with some alterations, minor alterations by the Court. And in the brief, in that brief, they cited 52 times this Court should deny the CPC on the basis of what the lower court did. There was no such thing. Alitoson Suppose that there is a decision by a State intermediate court of appeals and the majority rejects a claim for certain reasons, and there is a concurrence in the judgment that says we would also reject the claim or I would also reject the claim for a different reason, and then that decision is summarily affirmed by the State supreme court. What happens there? I think it would be looked through. To what? To the majority. Just to the majority. You would assume that the State supreme court relied on the reasoning of the majority and not the reasoning of the concurrence. Correct. And based on what? What would be the basis of that assumption? Based on the common sense, workable, well-known, well-used rule of Gilst. What about the common sense, well-known, well-used, well-understood rule that a summary affirmance by an appellate court is not interpreted in this country as an adoption of the reasoning of the lower court? According to Gilst, where there has been one reason State judgment rejecting a Federal claim, Federal habeas courts should presume later unexplained orders rest upon the same ground. That's the rule of Gilst, and it's been applied by all the Strictly. Except that that was a procedural default question. It was, but the logic is the same. The logic is it most nearly reflects the role such orders are ordinarily intended to play. Well, I thought the logic would be, though, that it is unusual for a court reviewing a procedural determination. If you can't tell because it's silent, you would normally not assume the court went on to the merits when the lower court said there was a procedural bar. But when it's simply merits decisions in both cases, the argument, anyway, is that that's a different situation. Well, the circuits haven't ruled that way, and I know you're wanting to resolve the issue for all of us now. This Court has looked through on merits rulings as well without citing Gilst. Just last term, the Court in LeBlanc looked through and denied relief. In McWilliams. But when the question is, this question will arise only if that lower court decision was unreasonable. That's correct. So why shouldn't a court of appeals – why don't we assume that a court of appeals would not adopt a badly reasoned decision? Well, I think that probably that is a good assumption and that in most instances state courts get it right. But in the situation where a order is palpably unreasonable, what Congress directs us to do is apply de novo review. And so the individuals who will be injured by this rule, Respondent's rule and the lower court's rule, are the people whose very judgments ought to be getting greater review. Mr. Olive, if we're talking about consequences of the ruling here, it seems to me it's possible that by adopting a look-through rule, we would encourage State supreme courts to say more, perhaps very little more, maybe as little as we're agreeing with the result but not necessarily the reasoning. But equally possible would be to encourage State intermediate courts to say less and perhaps take advantage of Harrington so that no State court says anything and achieves maximum deference from Federal courts, like California has, for example. Should we be concerned that a ruling in favor of look-through might actually yield, if States are rational and look for the least cost and the most deference, adverse consequences to your clients? You know, there was an assertion of that in Richter, and the response was there is no merit to the assertion that our decision will encourage State courts to withhold explanations. Opinion-writing practices are influenced by considerations other than avoiding scrutiny by Federal courts, and that's at 562 U.S. 99. I'm asking you, do you agree with that? Yeah, I don't agree with that. Do you think that's right? I think that Federal, I mean, State court judges are not nearly as concerned with Federal review as some. I understand they are, but perhaps State legislatures are, and they may, for altruistic reasons, as in Georgia, very altruistic reasons, insist on a practice of some reason decision-making. But couldn't you see other State legislators making other decisions, say, like California has, because of the cost of analyzing these cases? Well, you know, just as an aside, that's changed now in California under Proposition 66. All capital cases start in the lower court and will go through the Yost process when that's eventually implemented. But, no, I don't think the legislatures or the courts, after AEDPA, are losing ground when it comes to Federal habeas. And they have reasons for structuring their processes in whatever way they please. And in Georgia, it's a serious opinion-writing endeavor by a trial court that then has looked through or has been for years until about two years ago by the appellate court. So how seriously should we take a word that you read from Ilst, which was presume It says the habeas court should presume that this simple one-word statement of the State supreme court means that the decision that's keeping the person in prison is, in fact, the decision of the intermediate appellate court. Now, then, if it's a presumption, the State could refute it. And I guess, is this right? The State would be free to say, well, look, here, Your Honor, the Federal judges, look, this decision of the intermediate court is so obviously wrong. In any way, there's so obviously a procedural ground, an adequate State ground. And look at what they argue to the State supreme court and bring out the briefs and say, under these circumstances, you shouldn't presume that that lower court decision is what the supreme court decided on. Indeed, nobody even claimed in the supreme court that they ought to just decide on that ground. I mean, would you be free to do such – would they be free to do that kind of thing? I think they would, but the State has never in Georgia disagreed that it's most improbable that the Georgia supreme court's decision did not rely on that decision. Breyer. Well, in Georgia, I take it, the adequate State ground is not really one – it's not in play in this kind of situation. But there are States where it are. I don't know how well – what I've just said and what you said, it would be free, is that basically the situation that most of the States use, because that's what's going on right now in the country. The circumstances under which the presumption can be rebutted are probably innumerable. And how the briefing went in the lower court and other indicia are important. Again, the Court in Georgia is perfectly free to, knows how to, and does issue orders denying CPC for basis other than the briefs of the parties or other than what was in the lower court. Did the lower court in this case that we looked through to, did it say anything at all about why it found no prejudice? It did, Your Honor. It said that much of the evidence that had been proffered in post-conviction was cumulative, which it really – there's an argument that it wasn't, that I can make, and also that the neuropsychological testing omissions could not be considered prejudicial, but didn't really give reasons other than the evidence of guilt and the evidence in aggravation. Well, it said – didn't it – I mean, it said a lot. I think it devoted about 30 pages to this. And I suspect you think that some of the things that it said were wrong, but is it fair to say that in general it said, in fact said over and over, one of the reasons why we find no – why the judge found no prejudice is that taking into account all the evidence that is suggested as mitigating and all of the aggravating evidence, and there was a lot of it here, the addition of this mitigating evidence wouldn't change the outcome. Didn't the Court say that? The Court did say that, but it wasn't – it didn't consider all of the mitigating evidence. There was a swath of mitigating evidence that had to do with this 19-year-old who had not, in the defense of the case, killed anyone with respect to this crime and whose lawyer said, he's just been bad and led a bad life. There was, in fact, presentation in post-conviction proceedings of evidence of redeemability for this person and his good acts. No, it wasn't, right. It wasn't presented at trial, but it was presented to the habeas court. And it was not mentioned by the habeas court. It wasn't mentioned. Right. But does that mean it wasn't considered? I mean, it does seem like – what is your answer to the argument that what you're asking the Federal habeas court to do really is to grade the quality of the opinion that was written? Well, the evidence that was offered was of institutional failure and also things like he was creative and intelligent and was struggling to break away from his past. And the redeemability, this court knows, with an 18-year-old, a 17-year-old, or a 19-year-old is serious mitigation. But, Your Honor, it's not a grading of what the judge did or the opinion that was written. 2254 works this way. The court says Federal habeas judges must train their attention on what was actually involved, this is a quote, in the application of this court's law to facts. That's kind of a grading, but you can get a D and pass under 2254. It's just egregious actions outside the realm that no one would consider reasonable. So what if the what the habeas court did was this? They say this is all the evidence that is proffered in mitigation. And this is all the evidence that was provided by the State in aggravation. And taking into account all the mitigation and all the aggravation, we conclude that there's no reasonable probability that a jury would have returned anything other than a sentence of death. Now, would that be unreasonable because there isn't a detailed explanation? In this case, we think it would be unreasonable. Again, the State wrote this order. There's nothing wrong with that. There's orders from both sides. And the judge takes it and amends it in whatever way they think necessary, and it was a very minimal way in this case. And the order that was written and the order that was signed reduced to irrelevancy. It went through item by item various things. But when it got to the institutional failure and to the positive characteristics and traits of this 19-year-old, you can't find it. So you can't reduce to irrelevancy under Porter important mitigating evidence. And that's what this order did. Alito, that does sound like greed. So let me modify what I my hypothetical, where there's no explanation.  There's just a listing of mitigation and aggravation. There's a little bit of explanation. There are three sentences of explanation, or there's a half a page of explanation. At what point does it become, would you say, okay, well, that's enough, it's reasonable? Well, that's the level of abstraction there is difficult for me to give an answer to, but this Court has given an answer in Williams and Wiggins and Rompila and Porter, where the Court painstakingly went through the evidence and aggravation and mitigation, especially on the prejudice prong. So grading is a bad label for it, but the ADPA says take a look at what they said and analyze it and see if it's reasonable. And the second prong of 2354D, which I didn't mention before, the Court has to grade in that you look at what the state fact findings were based upon. So you do have to look at the opinion. You do have to analyze the opinion if that's called grading. It doesn't take much to get a high enough grade to pass 2254 muster for the courts. And going back to the limited holding in Richter, this Court's language shows its fealty, really, to 2254. The Court says, quote, Under 2354D, a habeas court must determine what arguments or theories supported, and so if there's a written opinion, you can see what arguments or theories supported, or has here, could have supported, the state court's decision. And so if you know the reasons, and with look through, our argument is you do know the reasons, if you know the reasons for the decision, under Brumfeld, quoting Richter, you follow Richter where there is no opinion explaining the reasons relief has been denied, and under Wetzel, this Court says, taking out the second clause, habeas court must determine what arguments or theories supported the state court's decision. In this case, it is clear, and has been clear for years, that the arguments that support the Georgia Supreme Court's denial of CPC are those arguments that are in the state post-conviction reasoned order. And if the Court wishes to go beyond that, it's quite capable of doing it. It can issue three or four pages in denying CPC, and it does. It can issue a paragraph in denying CPC explaining reasons beyond the lower court, and it does. The Court, if the Court wants to do it, it can do it. It knows how to do it. Otherwise, the presumption in Yilts should be respected. Kennedy, had there been any commentary or, in the bar offers, any experience as to whether or not the Richter rule, in the cases where it applies, has proven to be workable and administratable, or unworkable and unadministratable? Do we have any experience? Is there any commentary on how Richter has worked out? I'm not aware of any commentary on how it's worked out. It no longer really is applicable in California with respect to death penalty cases. And the truth is, in noncapital cases, they're almost all indigent, and they almost all start in the trial court and work up, and they have the Yilts presumption. The workability of Richter and its application in other jurisdictions I've not seen commentary on. But it is, again, cabined to the unique situation, which otherwise the Court might have had to order de novo review with respect to the unique situation of there being no reasons given by a court. Now, Richter does require a habeas court, a Federal habeas court, to imagine all of the conceivable arguments that could have supported a State court decision. Correct? Yes, ma'am. So it, by definition, requires more work. Okay, Rick. It's an incredible situation. So it would be difficult for Federal District Court judges, if I were one, to imagine a set of considerations that might lead to a constitutional violation, determine whether there was a constitutional violation, then determine whether it would be unreasonable to find there wasn't a constitutional violation. So it's an interesting process to go through. Right now, the administrability is courts around the country that are looking at decisions from all States, including death penalty States, know the drill. They understand yields. It hasn't caused any problems. It's eminently workable. It makes common sense. Everyone knows how to do it. It's much simpler. Pardon? It's much simpler. Much simpler and well known. Because you're not really granting habeas relief that will result in necessarily in the release of the defendant, because once it goes back down, the State court can then decide which among the many possibilities there are to still affirm the conviction, correct? That's correct. And, you know, all that happens when you do an analysis of a recent decision, if you find it to be unreasonable, you get de novo review. You don't get relief. You get de novo review. And you may lose under de novo review. What the AEDPA has accomplished is removing from Federal judges the power to unilaterally by exercising de novo review and not paying any attention necessarily to what the State court ruling was, violate comity and Federalism. What the AEDPA did was say, no, you have to look at what the State court did and give it credit where credit's due. And to apply Richter in States where there is a State seeking credit for its reasonable decision to just ignore it creates sort of two polar opposites. Before the AEDPA, Federal courts could pay no attention to what a State court did and grant relief. And the State's rule now is Federal courts should pay no attention to what State courts did and deny relief. And I think the AEDPA strikes the right balance. It's between those two. Respect what the State court has done. If it's reasonable, then there's no de novo review. If it's unreasonable, there is de novo review. And whether you went under that review one way or the other is a separate question. There's no circuit having any trouble with this other than the lower court. This Court doesn't have any trouble with it when it looks through decisions and looks at the facts in the lower court. And I think the rule of all the circuits, other than the Eleventh, ought to be the rule for everyone, if I could reserve my time. Thank you, counsel. Ms. Warren. Mr. Chief Justice, and may it please the Court. A Federal habeas court must apply 28 U.S.C. 2254d standard to the last State court merits decision, whether that decision is summary and whether or not that decision is preceded by a lower State court's opinion. Put another way, Federal habeas courts conducting a 2254d inquiry are not required to look through a later summary State court merits decision to review only the specific reasoning of a lower State court opinion. Ms. Warren, can I just ask a question about the breadth of your position? It's a little bit confusing to me from the briefs. You spent a lot of time talking about the word decision and how habeas review is only available for decisions, not for opinions. So does your argument go that even when a State court, the higher State court has issued a reasoned decision, that even there the habeas court is not limited to that decision, but can and should decide whether there are other grounds? Justice Kagan, our position is that 2254d always applies to the decision. But when that last State court adjudication on the merits is reasoned, there is a textual basis in 2254d for the Federal habeas court to look at those reasons to help assess whether the decision itself is contrary to or involved in unreasonable application of this Court's precedents. I'm not sure I understand the question, but suppose you said that the reasoned decision that goes is that's completely wrong, so now we don't give deference to it, right? It's taken itself out of AEDPA because it's completely wrong. Are you saying, no, there's a second step where you have to say, well, if I were the judge, I could have written a better decision that would receive AEDPA deference? No, Justice Kagan, I don't think that's what our position is here. So we would say that looking to the reasoning as part of the analysis of the decision is part and parcel of ascertaining whether that last State court decision on the merits was contrary to or involved in unreasonable application. That, of course, is a very different situation than we have here, where the last State court decision is summary. And there is no evidence of what that last State court actually reasoned. There is only the decision. Ginsburg. So aren't we attributing to them? Ginsburg. It was a matter of practice in Georgia. I think Petitioner said the Georgia Supreme Court's practice is to issue a reasoned denial of a CPC whenever it disagrees with the lower court reasoning. So if it disagrees, it's its practice to tell us. Your Honor, I would disagree that it always issues a reasoned decision when it disagrees. It is certainly true that there are instances, a handful of instances that Petitioner points to where a reasoned denial has issued. But I don't think it is fair to characterize it or to presume that those are the only instances in which the Georgia Supreme Court would disagree with reasoned denial. I'm sorry. You're disavowing the statements of a former Supreme Court justice of Georgia Court and all the judges that signed on to that Amici brief? Respectfully, Your Honor. We disagree with the characterization. Well, but you don't know, do you? We don't. You don't know. You don't, but they do, because they actually did the work. Your Honor, we don't know. And similarly, the rest of us don't know. Why do we not know? I mean, what he quotes in his brief, is this wrong? He says that Supreme Court Rule 36 says when somebody files an application for a cause for a certificate of probable cause, the application, quote, he's quoting from the rule, will be issued where there is arguable merit. And here we have denied. And therefore, there is no arguable merit. Now, that seems like Euclid or whoever. I don't know. Was it Aristotle or something? But you see, that's their point. So how can you get up and say we don't know what they did? We do know they thought there was no arguable merit. So I guess what you're asking us to do is to think of ways that nobody has yet occurred to anybody that there was no arguable merit, not necessarily because it's a good opinion below, but because we've thought of one of your assistants, a bright young graduate, has walked into your office with a case from Georgia law of 1812, and judging from the dust, nobody's ever seen it before, but it was written by Oglethorpe's second cousin, twice removed, and there we are, and it's brilliant. Nobody's thought of it. You say, how do we know that wasn't their reason? Now, that's extreme, but you see my point. Okay? What's the answer to my point? Justice Breyer, I'm not sure exactly what the question was. Well, the point, the question, sorry. Well, from your pleasant expression, it sounded to me as if you were understanding my obscure question. I had two separate questions. One, I quoted the rule, which seemed to me what Justice Sotomayor said must be correct. Then I asked a separate question, that the problem, looking at it practically, is that you're asking us to take on a burden that only person who will have a greater burden is you, because you in your job, when faced with a decision of an intermediate appellate court and a denial of CPC, will have to sit there making up reasons that are not present in anybody's opinion, and I use Oglethorpe as a comic example of that, but it's that kind of thing that you'll have to do. So my question is, obviously, why should we take a system that works fairly well and throw this practical monkey wrench, which means a lot more work for you, into the gears? A few answers to your question, Your Honor. The first is we agree with the way that you stated the arguable merit standard, and I do think that is the correct way to view Rule 36 from the Georgia Supreme Court. As to the second point, a few different answers. As to the process, that process is exactly what the California courts do with Richter already, so it is not a novel process. But on the practical side of things, and as the Eleventh Circuit explained below, I think in practice the Federal habeas court, when assessing the Georgia Supreme Court's summary denial on the merits, will first look to the lower court to see if the lower court's reasoned opinion offers any reasonable basis. And so in many cases the process would be very similar. The problem here, and I think the problem that the thread that runs through the Petitioner's argument that is problematic, is presuming that the lower state court's reasons are the reasons of the Georgia Supreme Court. Kagan So, Ms. Warren, I take that. It seems to me that that's the question, right? What should we presume about what the Georgia Supreme Court is doing here? And in exactly the way you said. So let me give you a hypothetical. Let's say we have a Batson case. And there was a denial of relief in the Batson case. And but it was based on a very clear error of law. So somebody said it's a Hispanic defendant. And somebody said Hispanic defendants are not entitled to raise Batson claims. All right? And then the Supreme Court, the State Supreme Court, just says affirmed. All right? So what should we understand about that? Why is the State court doing that? What's the reasonable assumption about what the State court is doing? Warren I think there are two reasonable assumptions. The first is that they have, presuming that that claim was properly preserved for merits review at the Certificate for Probable Cause stage, we can presume that they have denied that claim on the merits. But then I think the other presumption we must make, according to this Court's precedents and admonitions, we should presume that the Georgia Supreme Court knew and followed the law. Kagan You see, this is seems a very odd thing to say the Georgia Supreme Court looked at an opinion and said that is such a bad opinion. It has such a clear error of Federal constitutional law. But we are not going to explain that to anybody. Instead, we're just going to affirm. Now, that's one option. The other option is that the Georgia Supreme Court had a bad day. And it, too, made an error. And the question is, and I suppose, you know, Ilst answered this question. But it seemed to me to answer it in a pretty reasonable way. It's like we just don't expect State supreme courts to say that's a clear error of Federal constitutional law and we are not going to tell anybody about it. Warren Well, the example you give, Justice Kagan, there are a few things about it. The first is if there is a clear error of law below and there is no other reasonable basis on which the Georgia Supreme Court could have denied relief, then habeas relief will ensue. Because even when the Federal Kagan No, no, no. Here there is. There is another basis. But you have to believe that what this State court is saying, even though this lower State court made an error of Federal constitutional law because we can dream up something better, we'll just affirm it. We won't tell anybody what we think is an alternative basis. We won't do anything. We'll just let it be out there. That judge will think that he's done a fine job. Everybody else will think that he's done a fine job. We'll just leave it out there. Because what? Because we can't be bothered to write two sentences saying, you know, we're affirming on a ground where, you know, yes, of course he's entitled to make a Batson claim, but he had a bad Batson claim. But, Justice Kagan, the situation you describe is exactly the situation where the approach we're describing is most important for reasons of Federalism and comedy. Because we must start with the proposition that this Court has reiterated time and time again that the Georgia Supreme Court did know and followed the law and to resist the readiness to attribute error that this Court described in Woodford v. Viscotti. But in those situations ---- I mean, it seems to me that that just makes a bizarre assumption about State courts, that they're so uninterested in errors of Federal constitutional law that they're just going to say, well, as long as we have something in our heads that suggests that the ultimate judgment was right, we're not going to tell anybody about them. We're going to leave them out there as something that the judge and the parties and future judges and future parties will think was right when we know it's wrong. That may be so, Justice Kagan. But, of course, 2254d does not require by its text reasoning. It does not require a statement of opinions. And this Court has already found, based on that very textual interpretation, the reasons are not required. And that is exactly what this Court is saying. Sotomayor, I'm sorry, but that's the problem, which is it does require. Because when you read 2254d, it talks about resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. So it requires us to look at the reasoning. So does A, when it talks to us about involved in unreasonable application of clearly established Federal law. So you're right, there's nothing that says you have to write an opinion in a particular way, but we do have to look at what they say. You even admit that. Justice Sotomayor, I think we have to look at what they say when they say something. And in a D-1 inquiry, looking at the involved in an unreasonable application, I think that language points to the situation I described with Justice Kagan earlier, where there is a reasoned opinion. Sotomayor, and let me just deviate to that question. Let's assume that there's an argument below. The State court denies the habeas petition summarily. Can the State now come into a habeas court and present an argument? That wasn't made below, and argue that that is an alternative ground to deny the habeas even though it wasn't presented below? Let me make sure I understand your hypothetical. Are you suggesting that the lowest State court did not issue a reasoned opinion? No, exactly. No reasoned opinion, but we know for a fact that this particular argument was not raised below. Well, in Georgia, by law, the lower State court, the State habeas court is required to issue a reasoned opinion. So that is not a situational argument. Sotomayor, I'm asking you what happens on federal habeas review. Can the State come in in this imagining that we have the State doing in every court? Not only do we have to imagine, the lawyers have to come in and set forth every potential constitutional violation and set forth every interpretation of the facts that are potentially available, decide which ones would be an unreasonable application of Federal law or unreasonable finding to grant the habeas. You have to do the same thing to deny one. All right. Could the State come in with a totally new argument that wasn't made to the State court at all and say you should deny habeas on this totally new argument? I'm not sure that it would be precluded from doing so, and certainly that's the inquiry that the Federal habeas court would be. So why do we bother having State habeas anymore? Why don't we just say don't have Federal habeas only and assume that the State will deny every habeas? I think an important point to show where there is not much daylight between the Petitioner's argument and ours is that we are not suggesting that that State habeas court lowered opinion is outlawed from consideration or that it has no role in the process whatsoever. In many cases, the very first place, and in many cases perhaps the very last place the Federal habeas court will look, is to that reasoned decision below, but not because it presumes those lower court reasons are the reasons of the last court that's adjudicated the claim on their merits, but simply to see whether a reasonable basis exists to sustain the denial. Sotomayor, you don't think that there's more respect for State court to let them make their own decisions? Because what we're doing is imagining what they would have said instead of just asking them. Your Honor, to the extent there's any discomfort with the imagining or the hypotheticals, that line has already been drawn by this Court in Richter. But Georgia, to the respect point, hasn't. There was absolutely no reasoned decision anywhere there. We had to do something. That is correct. But the textual analysis that this Court engaged as to 2254 applies equally here. It's the same text of the same statute, and there's no principled basis for deviating from that textual analysis when it is applied to the summary denial on the merits by the Georgia Supreme Court. As to your point about respect for State courts, Georgia has a two-tiered habeas system. There are two courts that will always pass on a habeas claim that is properly exhausted, first in the lower State court where reasoned opinion will ensue, and then the Georgia Supreme Court, which will analyze the application for CPC. And so to suggest that the Georgia Supreme Court should be written out altogether I think is also an affront to Federalism and to comedy. And to require a presumption that the Georgia Supreme Court has adopted those lower State court reasonings similarly is an affront to Federalism. And there is a question of Georgia law that is implicated here. It would be one thing if it were generally understood in Georgia that a summary affirmance by the State Supreme Court does not necessarily adopt the reasoning of the lower court. It would be another thing if it was the rule in Georgia or generally understood in Georgia that the opposite is true. So what do we do with that? Because there is no explicit rule in Georgia? Yeah. I think whether there is no Is there a specific rule in Georgia? Is there a well-known practice in Georgia? Well, Justice Alito, there is none that we are aware of. There is no, for example, court rule that explains it or law. Where did Petitioner get it from? Petitioner said that is the Georgia Supreme Court's practice when it disagrees with the court below, it still States. It doesn't adopt its reasoning. If it disagrees with the lower court, it will issue a decision saying so. Where does that come from? Justice Ginsburg, I believe that's based on Petitioner's practice. I would characterize that as anecdotal. The fact that five or six of these reasoned denials have issued over the hundreds or thousands of CPC applications the Georgia Supreme Court has reviewed, I do not think stands for the proposition that every time the Georgia Supreme Court disagrees with the lower court's reasoning, it takes the time to issue a reasoned dissent. Well, didn't Ilst tell us what we should generally draw from silence? It just says the maxim is that silence implies consent, not the opposite. Courts generally behave accordingly, not always, but generally, affirming without further discussion when they agree, not when they disagree, with the reasons given below. And that was, you know, that was a different context, as you say. It was procedural versus merits, but that basic reasoning was not limited to the context. It was a more general understanding of what silence means or generally should be taken to mean with respect to State supreme courts. Why wasn't it right? Well, Justice Kagan, a few reasons. First, this was a pre-Edput determination. It's a judge-made prudential doctrine that is restricted to help Federal courts ascertain whether it can hear Federal claims, not how to conduct substantive habeas review. And so it very well may be the case that in that context, in that context that is helping Federal habeas courts ascertain whether later State summary adjudications have vitiated a State court bar, that silence does imply consent. That is not the case here. What do you do when you're presenting an argument in these cases? Do you just, you, the State, respond primarily or only to the State court decision? Or do you say, we've got four more good arguments and so we're going to put all those in our brief? Mr. Chief Justice, I am not exactly sure of the practice. I don't think that it is limited to exactly what the State court has said below, but I cannot say for sure. What if the State supreme court says, you know, we think that this opinion is clearly wrong, but we're going to we're good lawyers and we're going to think of another opinion that could have been written. It wasn't, but it could have been. And we're going to affirm on that ground. Of course, we're not going to say this. We're just going to say affirm. But the thing that I'm thinking is this habeas Petitioner has never been presented with this alternative argument. So it might be that this habeas Petitioner would have a really good response to this alternative argument, but he doesn't even know that it's in the case. It seems quite unfair to the habeas Petitioner to say, your petition is denied, not to tell him why, even though he's never been given the chance to respond to this new reasoning. I think Harrington v. Richter already says that the Petitioner's burden still remains the same, which is to say that there is no reasonable basis on which that court could have based its denial of relief. Counsel. We don't go that far in this case. And this is not a case where anybody is arguing that the decision of the Georgia Supreme Court is a reasonable one based on some ground that was never raised by anybody below. The contours of the dispute here are very well known. Deficient performance, which has largely dropped out, and the question of prejudice. So it's all about whether there was prejudice under Strickland. And so do we have to go so far as to make a rule? Do we have to have a do we have to decide in this case what would be the situation where the issue, the ground for affirmance was never raised at all below, or where the ground for affirmance that is attributed to the State supreme court is different from the basic ground for affirmance that was addressed by the district court, by the lower state court? Well, I think that all this Court has to do is apply what it has already found in Harrington v. Richter. And then that has laid out the process for how the Federal habeas court would treat the Georgia supreme court's summary adjudication on the merits there. Counsel, you know, of course, in this Court we say our summary affirmances are not necessarily an endorsement of the lower court's reasoning. That's well established in this Court's jurisprudence. And as I understood Mr. Olive, he said it might be a different case if that were clearer in Georgia. So let's say we are going to now confront 50 States or X number of States with rules or something in their precedents or on footnotes saying we do not necessarily endorse all of the lower court reasoning, just exactly as this Court has done for itself. Then what? I think if a State has a clear rule, either by case law or a rule by its court, that gives further direction as to how to treat summary affirmances, that those would be honored. But where as here the Georgia supreme court has no rule, has no clear binding practice that is consistently indicative of what it intends by summary affirmances, that the summary affirmance of the Georgia supreme court should not be treated the exact opposite as the way this Court and other Federal courts treat their own summary affirmances. Breyer, there is a big difference. I mean, first, Harrison is different, because in Harrison there was no decision of the State court that you could look to. Obviously, the Federal habeas court has to try to figure out some theory as to what they were holding. That isn't the question here, where there is a decision of the court, and where a habeas court later takes that decision as being the decision from the State that  What does that say about whether the summary affirmance should be treated as precedent for State law? It says nothing, I think. When you have us saying ours should not be treated that way, of course we don't want it as a precedent binding every court in the nation. When a Federal appeals court says our summary affirmance does not mean that we agree, of course they don't want it to be binding throughout the circuit. But this decision before us has nothing to do with that. We can say the district that set the appeals court in Georgia has made the decision that is leading to his deprivation of liberty and ignore the summary affirmance without saying anything about whether the summary affirmance is precedent or not, a matter not before us. Isn't that so? Justice Breyer, you are correct that I don't think this Court has to make a judgment as to what the summary affirmances mean in Georgia. But at that point, I would ask the Court to go back to the text, because the text requires application of 2254d to the adjudication of the claim that resulted in a decision. The decision under review is the decision by the Georgia Supreme Court, and the text of AEDPA does not authorize habeas relief, de novo or ultimate relief, based on the lower court's reasoning that are not attributed to the lower court. Sotomayor, I just have so much trouble. It starts with what Justice Kagan said. You admit that if it's a reasoned decision in the Supreme Court, we have to look at the reasoned decision, correct? Yes, Your Honor. I think that's what the Court said. And there is nothing in the language of 2254d that says that. It just says you have to look at the reasoning and determine whether they are — it's contrary to Federal law. So I'm not sure how that gets to you, to where you're going. We're looking at a decision. We're looking at the one court that the State system has designated as the court that is required to take the evidence and give a full reasoned decision. So we are looking at the full reasoned decision and deciding whether that reasoned decision stands or not. Your Honor, it's correct that the lower State court will always have reasons, but the Georgia legislature has not said by law that those reasons are the reasons attributable to the Georgia Supreme Court. And looking to the text, as Your Honor was, there is a difference. Sotomayor, we're not saying it either. All we're saying is that these reasons don't stand up to habeas scrutiny. And we would send it back for the court to properly, and because it's its decision, it shouldn't be ours, to see if there's another ground for it to affirm. In those set of circumstances, however, Your Honor, where the lower State court's reasoning contains an infirmity, because the lower State court's reasoning shows that the decision below was contrary to or an unreasonable application of this court's precedents, it is not the most probable, it is not the most pragmatic, and it is not the correct presumption to presume that those lower State court's reasons are imputed on the Georgia Supreme Court, the last State court to adjudicate the claim on the merits. That is what's going to happen. Sotomayor, it's okay for you when we say you do that to find a procedural bar, because you like that. But if we're going to do it, why don't we do it in every situation, other than that you like one part of it and not the other? Well, I would certainly resist that characterization, but I would say that Ilst's purpose, as it was originally conceived, is consistent with and complementary to the inquiry that this Court later set out in Harrington v. Richter. And so using Ilst for the purpose that Ilst was originally intended, which is to identify the State court bars and to preserve them, which is a probable assumption where silence may very well equal consent, that that respects comedy in its own way by ensuring that State court procedural bars are not vitiated by later State court summary opinions. Here, asking this Court to make sure that the Georgia Supreme Court or any highest State court of the land does not have infirm reasoning imputed on it when they are faced with both reasonable and unreasonable bases on which to sustain the denial of relief also serves comedy and is the best or is in service of Federalism and comedy in that set of cases where it matters the most when that lower State court may contain an infirmity. And for that reason, the presumption that is the thread running throughout Petitioner's argument, the presumption that the lower State court's reasons are the same as the last State court's decision, cannot stand.  Roberts, Thank you, counsel. Three minutes, Mr. Allen. Thank you, Mr. Chief Justice. Until about a year ago, the State was well aware of what the State process was in Georgia. The State process in Georgia is the parties submit a proposed order, and the State's order in this case is at docket number 18-1 in the record, and then a final order is entered, and in this case it's docket 18-4 in the record, barely changed. And, Mr. Chief Justice, if they had four more good arguments to make, they would have been in their proposed order that they submitted to the court to begin with. Does the court say when it disagrees with the lower court judgment? A dissenting judge, Jill Pryor, below at joint appendix 380. Mr. Olive, we're spending a lot of time arguing about Georgia's specific law, and I guess I'm wondering if it all turns on what the State court practice is, and we're going to create a huge incentive for State court to simply adopt different orders that say we adopt more or less the reasoning of the appellate court, but not necessarily all of it, and there may be other reasons. What have we accomplished in this? Presumably, we're going to defer to those final decisions of the State courts and not look behind those. I mean, I haven't heard an argument that we'd look behind that kind of ruling. So what exactly have we accomplished here? I think what the State's rule creates is a maze trying to figure out what a summary affirmance means in a State, what a discretionary denial of an appeal means, what do any of them mean when the YILTS rule applies across the board? The YILTS rule says a silence means agreement. So even if a State supreme court says we affirm the judgment, and it uses language exactly like this court uses, but not necessarily all the reasonings, and there may be additional reasons beyond those that the lower court provided, we would look behind that? Is that the suggestion, and how does that fit with Federalism and Comedy? What YILTS holds is that we're trying to figure out what's most probable, not necessarily what is absolutely right, what is most probable. And we think, the Court said, what's most probable is agreement with the lower court. It can be rebutted in your example. Even when the Supreme Court disclaims that? Pardon? In your example, that's a circumstance which could lead to rebuttal. OK. And in the Georgia Supreme Court. In that case, then, what have we accomplished, is my question, if you could answer that. You mean by just having a rubber stamp that says not for the same reason? Well, it's just going to be a slightly different rubber stamp. Well, I think we've created a simple rule, and States could decide what they want to do. Correct? I see my time is up. I'd love to say correct. I'd say correct and stop if I were you. I would at least like to give you the final word. You can take a sentence. Yes, Your Honor. Thank you, counsel. The case is submitted.